## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 06-20253(MBM) |
| | : | |
| BROWNSVILLE GENERAL | : | |
| HOSPITAL, INC., | : | CHAPTER 11 |
| | : | |
| Debtor. | : | |
| _____ | : | JUDGE McCULLOUGH |

### DEBTOR'S SECOND AMENDED PLAN OF ORDERLY LIQUIDATION
### DATED DECEMBER 27, 2006

**QUINN, BUSECK, LEEMHUIS, TOOHEY
& KROTO, INC.**
Lawrence C. Bolla, Esq.
Pa. I.D. #19679
Nicholas R. Pagliari, Esq.
Pa. I.D. #87877
2222 West Grandview Boulevard
Erie, PA 16506-4508
(814) 833-2222

Attorneys for Debtor,
Brownsville General Hospital, Inc.

# TABLE OF CONTENTS
## DEBTOR'S SECOND AMENDED PLAN OF ORDERLY LIQUIDATION

Page

**ARTICLE I** DEFINITIONS ....................................................................................2

    1.0    Definitions.............................................................................................2

**ARTICLE II** INTERPRETATION: APPLICATION OF DEFINITIONS, RULES OF
CONSTRUCTION, AND COMPUTATION OF TIME................................................8

**ARTICLE III** ADMINISTRATIVE EXPENSE CLAIMS.......................................9

    3.1    Administrative Expense Claims............................................................9
    3.2    Professional Compensation...................................................................9
    3.3    Administrative Bar Date .......................................................................9

**ARTICLE IV** CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS .................10

**ARTICLE V** TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE
PLAN ....................................................................................................................11

    5.1    Class 1: Priority Claims .....................................................................11
    5.2    Class 2: Secured Claims......................................................................12
    5.3    Class 3: General Unsecured Claims.....................................................12
    5.4    Class 4: Equity Interests.....................................................................13

**ARTICLE VI** ACCEPTANCE OR REJECTION OF THE PLAN .......................13

    6.1    Holders of Claims Entitled to Vote.....................................................13
    6.2    Acceptance by Impaired Classes .........................................................13
    6.3    Presumed Acceptance of the Plan........................................................13
    6.4    Presumed Rejection of the Plan ..........................................................14
    6.5    Nonconsensual Confirmation...............................................................14

**ARTICLE VII** MEANS OF IMPLEMENTATION OF THE PLAN ...................14

    7.1    Oversight of Plan by Advisory Board..................................................14
    7.1.1  Composition of BGH Advisory Board .................................................14
    7.1.2  Members of BGH Advisory Board ......................................................15
    7.1.3  Role and Standing of BGH Advisory Board; No Fiduciary Obligations..........15
    7.1.4  Successors to BGH Advisory Board....................................................15
    7.1.5  Indemnification of BGH Advisory Board............................................15
    7.2    The BGH Plan Administrator ..............................................................16
    7.2.1  Responsibilities of the BGH Plan Administrator.................................16

7.2.2    Compensation of the BGH Plan Administrator ..................................................17
7.2.3    Claims Against the BGH Plan Administrator..................................................18
7.2.4    Commingling of Estate Property and Liquidating Plan Proceeds ...................18
7.2.5    Maintenance of Books and Records ................................................................18
7.2.6    Reliance on Others..........................................................................................18
7.2.7    Liability for Errors or Omissions ...................................................................19
7.2.8    Indemnification of BGH Plan Administrator..................................................19
7.2.9    Bonding of BGH Plan Administrator ..............................................................19
7.2.10   Removal of BGH Plan Administrator...............................................................20
7.2.11   Resignation of BGH Plan Administrator .........................................................20
7.2.12   Appointment by Court of Successor to BGH Plan Administrator....................20
7.2.13   Requirements to be Fulfilled by Successor to BGH Plan Administrator...........20
7.3      Permitted Investments of Estate Property and Liquidating Plan Proceeds ......21
7.3.1    Types of Permitted Investments......................................................................21
7.3.2    Types of Bank Accounts Permitted .................................................................21
7.3.3    Terms of Permitted Investments ....................................................................21
7.3.4    Valuation and Redemption of Permitted Investments .....................................21
7.4      Amendment to Plan Prior to Effective Date ...................................................22
7.5      Cancellation of Equity Interests......................................................................22
7.6      Creditors' Committee .....................................................................................22

**ARTICLE VIII** DISTRIBUTIONS UNDER THE PLAN.......................................................23

8.1      Initial Distribution Date .................................................................................23
8.2      Disputed Reserves...........................................................................................23
8.2.1    Establishment of Disputed Reserves...............................................................23
8.2.2    Maintenance of Disputed Reserves.................................................................23
8.3      Quarterly Distributions After Initial Distributions .........................................24
8.4      Record Date for Distributions.........................................................................24
8.5      Delivery of Distributions ................................................................................24
8.5.1    General Provisions; Undeliverable Distributions ...........................................24
8.5.2    Minimum Distributions...................................................................................25
8.5.3    Unclaimed Property ........................................................................................25
8.6      Surrender of Canceled Instruments and Securities ..........................................25
8.6.1    Generally.........................................................................................................25
8.6.2    Failure to Surrender Canceled Instruments.....................................................25
8.7      Lost, Stolen, Mutilated or Destroyed Instrument or Security..........................26
8.8      Manner of Cash Payments Under the Plan ......................................................26
8.9      Time Bar to Cash Payments by Check .............................................................26
8.10     Limitations on Funding of Disputed Reserves.................................................26
8.11     Compliance with Tax Requirements ................................................................27
8.12     No Payments of Fractional Cents ....................................................................27
8.13     Interest on Claims ...........................................................................................27
8.14     No Distribution in Excess of Allowed Amount of Claim.................................27
8.15     Setoff and Recoupment...................................................................................27

**ARTICLE IX** DISPUTED CLAIMS ...................................................................... 28

    9.1    Objection Deadline ................................................................ 28
    9.2    Estimation of Claims............................................................. 28
    9.3    Prosecution of Objections and Requests for Estimation................ 28
    9.4    No Distributions Pending Allowance ...................................... 29

**ARTICLE X** EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................ 29

    10.1    Acceptance of Executory Contracts and Unexpired Leases .............. 29
    10.2    Rejection of Executory Contracts and Unexpired Leases................. 29
    10.3    Approval of Rejection of Executory Contracts and Unexpired Leases ........... 29
    10.4    Approval of Acceptance of Executory Contracts and Unexpired Leases......... 29

**ARTICLE XI** ABANDONMENT OF PROPERTY ................................................ 30

    11.1    Abandonment of Property Under the Plan.......................................... 30
    11.2    Abandonment by BGH Plan Administrator.......................................... 30
    11.3    Abandonment Claims............................................................... 30

**ARTICLE XII** CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN
AND THE EFFECTIVE DATE .................................................................. 30

    12.1    Conditions Precedent to the Confirmation of the Plan ................... 30
    12.2    Conditions Precedent to the Effective Date of the Plan................... 30
    12.3    Waiver of Conditions Precedent .................................................. 31

**ARTICLE XIII** EFFECTS OF CONFIRMATION .............................................. 31

    13.1    Vesting of Assets ................................................................. 31
    13.2    Release of Assets ................................................................. 31
    13.3    Binding Effect ..................................................................... 31
    13.4    Term of Injunctions or Stays..................................................... 31
    13.5    Estate Litigation .................................................................. 32
    13.6    Injunction ......................................................................... 32
    13.7    Injunction Against Interference with Plan .................................... 32
    13.8    Retention and Preservation of Claim Objection and Estate Litigation ............ 33

**ARTICLE XIV** RELEASES, INJUNCTIONS AND WAIVERS OF CLAIM ..................... 34

    14.1    Release of Creditors' Committee and Debtor.................................. 34
    14.2    Release of Released Parties by the Debtor .................................... 34
    14.3    Release by Holders of Claims................................................... 34
    14.4    Costs of Asserting Claims Against Released Parties......................... 35

**ARTICLE XV** RETENTION OF JURISDICTION ................................................................. 35

    15.1    Retention of Jurisdiction ................................................................. 35

    15.2    Modification of the Plan ................................................................. 37

**ARTICLE XVI** MISCELLANEOUS PROVISIONS ........................................................... 38

    16.1    Payment of Statutory Fees ................................................................. 38

    16.2    Exemption from Certain Transfer Taxes ........................................................ 38

    16.3    Governing Law ................................................................. 38

    16.4    Notices ................................................................. 38

    16.5    Further Documents and Actions ................................................................. 39

    16.6    Relationship Between the Plan and Disclosure Statement ................................ 39

    16.7    Reservation of Rights ................................................................. 39

    16.8    Post-Confirmation Date Fees and Expenses ................................................... 39

    16.9    Binding Effect ................................................................. 40

    16.10   Exhibits ................................................................. 40

### DEBTOR'S SECOND AMENDED PLAN OF ORDERLY LIQUIDATION OF BROWNSVILLE GENERAL HOSPITAL, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Brownsville General Hospital, Inc. (hereinafter the "Debtor" and/or "BGH") proposes this Second Amended Plan of Orderly Liquidation pursuant to the provisions of Chapter 11 of the Bankruptcy Code ("the Plan"). The Debtor's initial Plan was proposed prior to the expiration of the Debtor's exclusivity period on September 24, 2006 and following the sale of certain of the Debtor's assets to Great American Group for $448,500.00 pursuant to the Great American Asset Purchase Agreement. The Debtor believes that it is in its best interest to quickly move to a Plan of Orderly Liquidation so as to best maximize the recovery of remaining assets and minimize the liabilities of the estate for the benefit of all creditors.

Pursuant to the Plan, the Debtor proposes to conduct an Orderly Liquidation of the Debtor over a period expected to end in 2007. The Debtor intends to retain Robert S. Bernstein, Esquire, to function as the BGH Plan Administrator and oversee the Orderly Liquidation process. The Debtor and Committee have, therefore, agreed to transfer control of the liquidation of Estate Property to the Committee and/or an administrator of the Committee's choosing. The Orderly Liquidation process will result in a distribution of all of the Estate assets to its creditors.

The Debtor believes that higher value can be obtained for the Estate through an orderly liquidation as compared to a forced liquidation which would occur if the case were converted to a Chapter 7 proceeding, primarily due to the nature and character of the remaining assets and liabilities of the Estate. There are significant assets of the Estate including, but not limited to (1) potential federal and state income tax amounts previously paid which can be recovered (due to the losses of the estate) by filing the applicable federal and state tax returns; (2) substantial Chapter 5 actions which have already been filed by the Debtor; (3) Chapter 5 actions which the Debtor is contemplating filing; (4) cash deposits; (5) accounts receivable due from various health care providers. Likewise, it is anticipated that the liabilities of the Estate can be kept to lower amounts if a Plan of Orderly Liquidation is pursued. The liabilities of the Estate include, but are not limited to: (1) claims of the Pension Benefit Guaranty Corporation, (2) claims of the former landlords, (3) claims of the NLRB, (4) WARN Act claims, (5) general, unsecured proofs of claim. It is believed that if actively contested by the Estate, these claims can be settled at amounts believed to be substantially less than currently claimed.

The closing between the Debtor and Great American took place on or about June 6, 2006. Following the closing, most, if not all, of the Debtor's employees have been terminated. This eliminated the significant monthly payroll costs of the estate. It is anticipated that during the wind-down stage of the Plan, the BGH Plan Administrator will be able to manage the Debtor's Estate in an efficient and cost effective manner.

The BGH Plan Administrator will aggressively attempt to collect all outstanding claims and tax refunds rightfully due to the Estate. Once funds have been collected they will be utilized to make distributions to creditors.

# ARTICLE I

## DEFINITIONS

Unless the context otherwise requires, the following terms, when used in the Plan, shall have the meanings set forth below:

**1.0    Definitions**

    **1.01    "Administrative Bar Date"** means the last date on which a request for payment of an Administrative Expense Claim may be filed, as set forth in Article 3.3 of the Plan.

    **1.02    "Administrative Expense Claim"** means any right to payment constituting a cost or expense of administration of the Reorganization Case under sections 503(b) and 507(a)(l) of the Bankruptcy Code, including (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the Debtor's businesses; (b) Claims that have been determined by a Final Order to constitute an administrative expense of the Estate; (c) compensation Claims by Professionals; and (d) any fees or charges assessed against and payable by the Debtor under section 1930 of title 28 of the United States Code.

    **1.03    "Allowed"** means with reference to any Claim: any Claim (a) a proof of which was Filed within the applicable period of limitation fixed by the Court in accordance with Bankruptcy Rule 3003(c)(3) and as to which the Debtor or other party in interest have not Filed an objection on or before the expiration of the time period set forth for the objection to such claim in the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, or as to which, and to the extent, any objection has been determined by a Final Order in favor of the relevant Claim holder; (b) listed on the Schedules as other than disputed, contingent or unliquidated; (c) that has been allowed by a Final Order of the Court (provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan shall not be considered Allowed Claims hereunder); and (d) expressly allowed under or pursuant to the terms of the Plan.

    **1.04    "Assets"** means all the assets of the Estate of BGH, whether or not reflected in the financial records of BGH.

    **1.05    "Assumed Contracts"** means all executory contracts and unexpired leases assumed by the Debtor or BGH Plan Administrator as stated in Article 10.4 in either this Plan of Orderly Liquidation or pursuant to 11 U.S.C. §365.

    **1.06    "Bankruptcy Code"** means title 11 of the United States Code, as amended and in effect on the Petition Date.

    **1.07    "Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and (b) the local rules of the Court, in each case, as in effect on the Petition Date.

**1.08** **"BGH Advisory Board"** means those individuals or entities described in Article 7.1 of the Plan.

**1.09** **"BGH Plan Administrator"** means the person appointed in accordance with the Plan to administer the orderly liquidation of the Debtor.

**1.10** **"Business Day"** means any day other than (a) a Saturday; (b) a Sunday; and (c) a "legal holiday" as such term is defined in Bankruptcy Rule 9006 (a).

**1.11** **"Cash"** means legal tender of the United States of America.

**1.12** **"Cash Investment Yield"** means the net yield earned by the Debtor from the investment of Cash held pending Distribution in accordance with the provisions of the Plan.

**1.13** **"Causes of Action"** means any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims, remedies (including without limitation any remedy based on theories of equitable subordination or similar equitable relief) and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Reorganization Case, including through the Effective Date.

**1.14** **"Claim"** means any claim against the Debtor, whether or not asserted, known or unknown, as the term "claim" is defined in section 101(5) of the Bankruptcy Code, including all Administrative Expense Claims.

**1.15** **"Claim Holder"** means holders of Claims in Classes 1, 2, 3, and 4 entitled to receive Distributions under the Plan, whether or not such Claims were Allowed Claims on the Effective Date.

**1.16** **"Class"** means each of the groups of holders of Claims or Equity Interests described in Articles IV and V of the Plan.

**1.17** **"Collateral**" means any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim up to the amount of such Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

**1.18** **"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket of the Court.

**1.19** **"Confirmation Hearing"** means the hearing held by the Court to consider the confirmation of the Plan, as it may be adjourned or continued from time to time.

**1.20** **"Confirmation Order"** means the order of the Court confirming the Plan under section 1129 of the Bankruptcy Code.

**1.21** **"Court"** means the United States Bankruptcy Court for the Western District of Pennsylvania, Pittsburgh Division.

**1.22** **"Creditors' Committee"** means the official committee of unsecured creditors appointed by the United States Trustee in the Reorganization Case on February 17, 2006 to represent unsecured creditors of the Debtor, as that committee may be constituted from time to time.

**1.23** **"Creditor Liquidation Fund"** means the fund for distribution to creditors pursuant to Article VIII of the Plan.

**1.24** **"Debtor"** means, Brownsville General Hospital, Inc., or "BGH"

**1.25** **"Disclosure Statement"** means the Second Amended Disclosure Statement Dated November 6, 2006 to Accompany Second Amended Liquidating Plan Dated November 6, 2006, including the exhibits, appendices, and schedules thereto, as the same may be amended, modified, or supplemented from time to time and as approved by the Court pursuant to the Disclosure Statement Approval Order.

**1.26** **"Disclosure Statement Approval Order"** means the Order dated November 7, 2006 approving the Disclosure Statement.

**1.27** **"Disputed Claim"** means a Claim or any portion thereof, (a) listed on the Schedules as unliquidated, disputed or contingent; (b) as to which the Debtor, the BGH Plan Administrator or any other party in interest has Filed a timely objection or a request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order; (c) for which the amount or classification of the Claim specified in the relevant proof of claim exceeds the amount or classification of any corresponding claim listed in the Schedules by the Debtor; (d) no corresponding Claim has been listed in the Schedules by the Debtor or (e) is otherwise disputed by the Debtor, the BGH Plan Administrator or any other party in interest in accordance with applicable law, which dispute has not been withdrawn or determined by a Final Order.

**1.28** **"Disputed Reserve"** means a reserve established for the relevant Class for, among other things, the payment or other satisfaction of Disputed Claims that are Allowed after the effective Date, which shall be held in the Estate by the BGH Plan Administrator.

**1.29** **"Distributions"** means the distributions of Cash or other property of the Estate to be made in accordance with the Plan.

**1.30** **"Effective Date"** means a date, as determined by the Debtor and the Creditors' Committee, that is a Business Day on which (a) all conditions precedent set forth in Article 12.2 of the Plan have been satisfied or waived as provided in Article 12.3 of the Plan and (b) no stay of the Confirmation Order is in effect.

**1.31    "Employee Programs"** shall mean any program to or for the benefit of the employees of the Debtor, including any 401(k) or similar savings or retirement programs, short-term or long-term disability, health, vision or dental insurance, life insurance or any accidental death or dismemberment insurance.

**1.32    "Employee Program Claim"** shall mean any Claim arising from or related to the Debtor's operation or maintenance of any of its Employee Programs.

**1.33    "ERISA"** shall mean the Employee Retirement Income Security Act of 1974, as amended.

**1.34    "Entity"** means an entity as defined in section 101(15) of the Bankruptcy Code.

**1.35    "Equity Interests"** means (a) any capital stock or other ownership interest in the Debtor including equitable ownership; (b) any option, warrant, or right to purchase, sell, or subscribe for an ownership interest in, or other equity security of, the Debtor; (c) any and all redemption, conversion, exchange, voting, participation, or dividend rights or liquidation preferences relating to any of the foregoing; and (d) all Claims arising in connection therewith, including, without limitation, Claims arising from the rescission of a purchase or sale of an equity security of the Debtor, for damages arising from the purchase or sale of such security, or for reimbursement or contribution under section 502 of the Bankruptcy Code on account of such Claim and attorneys' fees associated therewith.

**1.36    "Estate"** means the estate of the Debtor in its Reorganization Case created by section 541 of the Bankruptcy Code upon the commencement of its Reorganization Case.

**1.37    "Estate Litigation"** means all claims, Causes of Action and Recovery Actions of the Estate against third parties, including but not limited to, any litigation or claims instituted or asserted by the Debtor prior to the Effective Date or which may be brought by the BGH Plan Administrator to recover preferences, fraudulent conveyances, claims, causes of action or avoidance actions of any kind whatsoever.  No party other than the BGH Plan Administrator shall have any right to commence or pursue any Estate Litigation after the Effective Date.[1]

**1.38    "Estate Property"** shall mean the Estate Litigation and the Assets, including interest income accumulations thereon.

**1.39    "File" or "Filed"** means, with respect to any pleading, entered on the docket of the Reorganization Case and properly served in accordance with the Bankruptcy Rules.

**1.40    "Final Order"** means an order or judgment of the Court as to which the time to appeal, petition for certiorari, seek mandamus, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing is pending; or, if an appeal, writ of certiorari, or petition for mandamus, reargument, or rehearing has been Filed or sought with respect to any order or judgments of the Court, that order or judgment has been affirmed by the highest court to which it was appealed, or certiorari has

---

[1] The claims, causes of action and recovery actions of the Estate are more fully disclosed in Article XIII hereof.

been denied or mandamus, reargument, or rehearing has been denied or resulted in no modification thereof, and the time to take any further appeal, petition for certiorari or move for mandamus, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure (or any analogous motion under the Bankruptcy Rules) may be Filed with respect to an order or judgment shall not cause such order or judgment not to be a Final Order.

      **1.41    "General Unsecured Claim"** means an unsecured claim against the Debtor as provided for under Section 5.3 herein.

      **1.42    "Impaired"** means, with respect to any Claim or Equity Interest, a Claim or Equity Interest with respect to which the Plan alters the legal, equitable, or contractual rights to which such Claim or Equity Interest entitles its holder.

      **1.43    "Initial Distribution Date"** means the date on which the Estate shall make its initial Distribution, which shall be a date selected by the BGH Plan Administrator.

      **1.44    "Liabilities"** means the all the liabilities of the Estate of BGH, whether or not reflected in the financial records of BGH.

      **1.45    "Lien"** has the meaning ascribed to that term in section 101(37) of the Bankruptcy Code, except that a lien that has been or may be avoided pursuant to a Recovery Action shall not constitute a Lien for the purposes of the Plan.

      **1.46    "Liquidating Plan Proceeds"** means the proceeds from the collection, sale or other disposition of Estate Property, net of the sum of: (i) customary closing costs, fees and commissions, including but not limited to, legal and accounting fees and disbursements, fees of brokers, finders and investment bankers, and all federal, state and local taxes and transfer fees; (ii) all valid liens, encumbrances or other claims, and (iii) reasonable expenses incurred on behalf of the Estate or the BGH Plan Administrator.

      **1.47    "Permitted Investments"** means those investments of Estate Property or Liquidating Plan Proceeds by the BGH Plan Administrator as described in Article 7.3.

      **1.48    "Petition Date"** means January 29, 2006, the date on which the Debtor filed its Chapter 11 petition and commenced the Reorganization Case.

      **1.49    "Plan"** means this Second Amended Plan of Orderly Liquidation of BGH under Chapter 11 of the Bankruptcy Code dated December 27, 2006, (including the Plan Supplement and all schedules and exhibits hereto or thereto), as the same may be amended, modified, or supplemented from time to time in accordance with its terms.

      **1.50    "Priority Claim"** means any Claim of a kind specified in section 502(i) or 507(a)(3), (4), (5), (6), (7), (8) or (9) of the Bankruptcy Code.

**1.51**   **"Professional"** means any person or Entity employed pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Confirmation Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.52**   **"Quarterly Distribution Review Date"** means the last day of each quarterly calendar period (i.e., December 31, March 31, June 30, and September 30 of each calendar year) as of which the BGH Plan Administrator will perform a review of the cash and financial position of the Estate (including, but not limited to, considering cash on hand and the balances of Disputed Reserves, the Secured Fund and the Unsecured Fund) to determine if, and to what extent, distributions can be made.

**1.53**   **"Ratable Proportion"** means, with reference to any Distribution on account of any Allowed Claim in any Class, the ratio (expressed as a percentage) that the amount of the Allowed Claim bears to the aggregate amount of all Allowed and Disputed Claims in that Class.

**1.54**   **"Record Date"** means the record date for determining the entitlement to receive Distributions under the Plan on account of Allowed Claims, which shall be the date the Disclosure Statement Approval Order is entered.

**1.55**   **"Recovery Actions"** means, collectively and individually, without limitation, (a) preference Claims or Causes of Action, fraudulent conveyance Claims or Causes of Action, rights of setoff and other Claims and Causes of Action under sections 510, 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and other applicable bankruptcy and non-bankruptcy law; (b) Claims and Causes of Action arising out of illegal dividends or similar theories of liability; (c) Claims or Causes of Action based on the piercing the corporate veil, alter ego liability or similar legal or equitable theories of recovery arising out of the ownership or operation of the Debtor; (d) Claims and Causes of Action based on unjust enrichment; (e) Claims or Causes of Action for breach of fiduciary duty, breach of duty of loyalty, negligence, waste, mismanagement, malfeasance, and similar Causes of Action, or, to the extent it is a Claim or Cause of Action of any of the Debtor, fraud; (f) Claims or Causes of Action for breach of contract, contribution, indemnification or reimbursement; (g) Claims or Causes of Action relating to retiree medical benefits and the provision of officer and director liability insurance or indemnification;[2] (h) Claims or Causes of Action to recover property of the Estate; and  (i) any other Claim or Cause of Action the Debtor has against any person or entity that is not barred by the applicable statute of limitations or other such reason.

**1.56**   **"Released Parties" or "Released Party"** has the meaning ascribed thereto in Article XIV.

**1.57**   **"Reorganization Case"** means the case commenced by the Debtor under Chapter 11 of the Bankruptcy Code before the Court, as referenced by case number 06-20253(MBM).

**1.58**   **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor on March 8, 2006 pursuant to section 521 of the Bankruptcy

---

[2] The claims, causes of action and recovery actions of the Estate are more fully disclosed in Article XIII hereof

Code, as such schedules and statements have been or may be supplemented or amended from time to time.

**1.59    "Secured Claim"** means a Claim that is secured by a Lien on the property in which the Estates has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to a setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or to the extent of the amount subject to the setoff.  (As of the date of the Debtor's Second Amended Plan of Orderly Liquidation dated December 27, 2006, the Debtor is unaware of any secured claims against its assets.)

**1.60    "Subordinated Claims"** means all Claims (a) arising from the rescission of a purchase or sale of any security of the Debtor (other than equity securities), from damages arising from the purchase or sale of such a security, or for reimbursement, contribution, or indemnification allowed under section 502 of the Bankruptcy Code on account of such Claim and (b) all Claims for fines, penalties, and punitive damages.

**1.61    "Unimpaired"** means a Claim or an Equity Interest that is not "Impaired" within the meaning of section 1124 of the Bankruptcy Code.

**1.62    "United States Trustee"** means the United States Trustee appointed under section 591 of title 28 of the United States Code to serve in the Western District of Pennsylvania.


## ARTICLE II

## INTERPRETATION: APPLICATION OF DEFINITIONS, RULES OF CONSTRUCTION, AND COMPUTATION OF TIME

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter.  For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially in that form or substantially on those terms and conditions; (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed means the document or exhibit as it may have been or may be amended, modified, or supplemented; and (c) unless otherwise specified, all references in the Plan to Articles, Schedules, and Exhibits are references to articles, schedules, and exhibits of or to the Plan. Unless otherwise specified, the words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan.  A capitalized term used but not defined herein shall have the meaning given to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

The headings in the Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Plan.  Unless otherwise indicated herein, all references to dollars are to United States dollars.

Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**ARTICLE III**

**ADMINISTRATIVE EXPENSE CLAIMS**

**3.1 Administrative Expense Claims**

Each Allowed Administrative Expense Claim (other than the Administrative Expense Claims of Professionals, which are dealt with in Article 3.2) shall be paid by the Estate in Cash, in full, on the later of the Initial Distribution Date or the date such Claim becomes an Allowed Claim, or in such amounts and on such other terms as may be agreed on between the holder of such Claim and the BGH Plan Administrator or is ordered by the Court.

**3.2 Professional Compensation**

Professionals or other Entities asserting Administrative Expense Claims based on professional services rendered before the Confirmation Date must File and serve the Debtor, the BGH Plan Administrator, Counsel to the Creditors' Committee, and such other Entities as are designated by the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order, or any other order of the Court, an application for final allowance of such Claim no later than 45 days after the Confirmation Date.  Objections to any application for final allowance of compensation by Professionals must be Filed and served on the Debtor, the BGH Plan Administrator, counsel to the Creditors' Committee, and the requesting Entity by the later of (a) 30 days after the Effective Date and (b) 30 days after the Filing of the relevant application.

**3.3 Administrative Bar Date**

Any request for the payment of an Administrative Expense Claim (other than the Administrative Expense Claims of Professionals, which are dealt with in Article 3.2) shall be discharged and barred forever and shall not be enforceable against the Debtor or any of the property of any of the foregoing, unless such request for the payment of an Administrative Expense Claim is Filed and served upon the Debtor and the BGH Plan Administrator within thirty (30) days after the Confirmation Date.

**ARTICLE IV**

**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim shall be deemed to be classified in a particular Class only to the extent that such Claim qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that the remainder of such Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that such Claim is Allowed in that Class and has not been otherwise settled prior to the Effective Date.

The classification of Claims and Equity Interests of the Debtor pursuant to the Plan are as follows:

| Class | Class Name | Status |
|---|---|---|
| Class 1 | Priority Claims | Impaired—entitled to vote |
| Class 2 | Secured Claims | Unimpaired (to the extent of the value of collateral for the claim)—deemed to have accepted the Plan and not entitled to vote [3] |

---

[3]  The Debtor is unaware of the existence of any significant secured claims.

| | | |
|---|---|---|
| Class 3 | General Unsecured Claims (including the claims of the former landlords, Medicare and the PBGC)[4] | Impaired—entitled to vote |
| Class 4 | Equity Interests | Impaired—deemed to have rejected the Plan and not entitled to vote |

The treatment of claims against, and Equity Interests in the Debtor is more fully set forth in Article V.

## ARTICLE V

## TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN

The following treatment set forth in this Article V shall be accorded to Claims against, and Equity Interests in, the Debtor.

### 5.1 Class 1: Priority Claims

Class 1 consists of all Priority Claims.  Unless the Debtor and the holder of such Claim agree to a different treatment, each holder of an Allowed Priority Claim shall be paid, in Cash by the Estate on the later of (a) the Initial Distribution Date or (b) the Quarterly Distribution Review Date next following the date on which such Claim is Allowed to the extent that sufficient cash, as determined by the BGH Plan Administrator in its sole discretion, (including, but not limited to, considering cash on hand and the balances of Disputed Reserves), is available in the Estate to make such distribution at that Quarterly  Distribution Review Date.

As currently filed, the total of all the priority claims exceeds the value of the Debtor's assets. However, the Debtor expects to resolve a significant number of these priority claims for substantially less than the face amount of these claims.  In addition, the Debtor has instituted substantial claims against Brownsville Health Services Corporation and West Point Health Corporation seeking the recovery of approximately $2,000,000.  Further, the BGH Plan Administrator reserves, and shall have the right to review and object to any and all unsecured claims filed against the Debtor.

Class 1 is impaired, and the holders of Class 1 claims are entitled to vote to accept or reject the Plan.

---

[4]  The Debtor and/or the Creditors' Committee and/or the BGH Plan Administrator have filed or will be filing objections to the claims of the former landlords, Medicare and the PBGC and the inclusion of these claims in Class 3 are in no way intended to nor shall they waive objections to these claims.  Further, the BGH Plan Administrator reserves, and shall have the right to review and object to any and all unsecured claims filed against the Debtor.

**5.2 Class 2: Secured Claims**

Class 2 consists of all Secured Claims.  Unless the BGH Plan Administrator and the holder of such Claim agree to a different treatment, each holder of an Allowed Secured Claim shall receive one of the following alternative treatments, at the election of the BGH Plan Administrator: (a) the Debtor shall surrender all Collateral securing such Claim to the holder thereof, without representation or warranty by or recourse against the Estate; or (b) if the Collateral securing such Claim is sold or otherwise converted to cash by the BGH Plan Administrator free and clear of the Secured Claim holder's Liens, such holder shall receive, as promptly as practicable upon the closing of such sale, Cash (net of reasonable costs and expenses of sale) in the amount of the value of such holder's interest in such Collateral.

The BGH Plan Administrator reserves the right to object to any claims filed or listed as secured claims and to the value of the collateral securing such claims.

To the extent that such Claim is not satisfied in full the claimant shall be entitled to a claim in Class 3 for the amount of such deficiency.

Class 2 is Unimpaired (to the extent of the value of the collateral for the claim) and is deemed to have accepted the Plan and are not entitled to vote.

**5.3 Class 3: General Unsecured Claims**

**5.3.1    (a)    Definition**: Class 3 consists of all allowed general unsecured claims. Class 3 includes the claims of the former landlords, the PBGC and Medicare which are nevertheless subject to the objections thereto filed or to be filed by the Debtor, the Creditors' Committee, or the BGH Plan Administrator.

**(b)    Treatment**: As currently filed, the Debtor does not have sufficient assets to make any payments to Class 3 creditors.  However, the Debtor expects to resolve a significant number of Class 1 priority claims for significantly less than the face amount of these claims.  In addition, the Debtor has instituted substantial claims against Brownsville Health Services Corporation and West Point Health Corporation seeking a recovery of approximately $2,000,000.  Additionally, the Debtor intends to object to a significant number of Class 3 Unsecured Claims.  It is anticipated that following the claims resolution process and the completion of the actions against Brownsville Health Services Corporation and West Point Health Corporation that funds will be available for a pro-rata payment of allowed Class 3 claims. The first payment to the Class 3 claimants will be made thirty (30) days after the later of the final resolution of the claims objection process and the final resolution of the claims against Brownsville Health Services Corporation and West Point Health Corporation, to the extent that cash is available.

### 5.3.2    Impairment

Class 1 and Class 3 are impaired, and the holders of Class 1 and Class 3 claims are entitled to vote to accept or reject the plan.

## 5.4 Class 4: Equity Interests

Class 4 consists of all Equity Interest in the Debtor.  The holder of the Equity Interest in the Debtor is Jars, Inc., c/o Gary B. Gosai.  The holders of the Equity Interest in the Debtor shall not receive any distributions nor retain any property under the Plan.  As of the Effective Date, all certificates, documents and other instruments underlying Equity Interests shall be canceled.

Class 4 is Impaired, but because no distributions will be made to the holders of Class 4 Equity Interests nor will such holders retain any property, such holders are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

## ARTICLE VI

## ACCEPTANCE OR REJECTION OF THE PLAN

## 6.1 Holders of Claims Entitled to Vote

Classes 1, 3 and 4 are Impaired under the Plan.  Each holder of an Allowed Claim (and each holder of a Claim that has been temporarily allowed for voting purposes only under Bankruptcy Rule 3018(a)) in Class 1 and Class 3 shall be entitled to vote to accept or reject the Plan.

## 6.2 Acceptance by Impaired Classes

Any Class of Impaired Claims shall be deemed to have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

## 6.3 Presumed Acceptance of the Plan

Class 2 is Unimpaired under the Plan, and, therefore, the holders of Class 2 Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**6.4 Presumed Rejection of the Plan**

Class 4 is Impaired under the Plan and the holders of Class 4 Equity Interests and Claims are presumed to have rejected the Plan  pursuant to section 1126(g) of the Bankruptcy Code.

**6.5 Nonconsensual Confirmation**

In view of the deemed rejection of the Plan by Class 4, the Debtor, as plan proponent, will request that the Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.  If any of the other Impaired Classes fail to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, the Debtor reserves the right to request that the Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such rejecting Class(es).

**ARTICLE VII**

**<u>MEANS OF IMPLEMENTATION OF THE PLAN</u>**

**7.1 Oversight of Plan by Advisory Board**

**7.1.1 Composition of BGH Advisory Board**

The parties that have a continuing interest in the Estate under this Plan are limited to those from Class 1 and Class 3 only.  In order to properly administer this Plan, an advisory board will be formed (the BGH Advisory Board).  The BGH Advisory Board shall consist of three individuals from Class 3 claimants, who shall be willing to serve on the BGH Advisory Board who shall have been designated as BGH Advisory Board Members by the Official Committee of Unsecured Creditors.  BGH Advisory Board members must have no conflict of interest in fulfilling their responsibilities, and in the event a BGH Advisory Board member develops a conflict that Board member shall abstain from advising the BGH Plan Administrator on that particular issue or resign from the BGH Advisory Board.  The BGH Advisory Board members may serve in that capacity only under the circumstances and on the terms and conditions set forth in this Plan.

### 7.1.2  Members of BGH Advisory Board

The initial BGH Advisory Board members shall be New Age Health Care, Inc. d/b/a Nursefinders of W. PA, Dunbar, Bender & Zapf, Inc. and Parente Randolph, LLC.  Each BGH Advisory Board member shall designate an individual representative to act on its behalf.

### 7.1.3  Role and Standing of BGH Advisory Board; No Fiduciary Obligations

The BGH Advisory Board shall act as advisors to the BGH Plan Administrator.  Any advice given or recommendations made individually or collectively by the BGH Advisory Board shall be made in their respective capacities as individual creditors of the Debtor, and except as otherwise expressly provided in this Plan, shall not be binding upon any other creditor or class, or the BGH Plan Administrator.  The BGH Plan Administrator shall provide regular reports on such basis as may reasonably be requested by the BGH Advisory Board.  The BGH Advisory Board shall have standing to file motions or seek other forms of relief, and to appear and be heard on any matter relating to the Estate or any activities of the BGH Plan Administrator as may be appropriate under the circumstances.  The BGH Advisory Board shall in no event be deemed to be fiduciaries of the Estate or to have any fiduciary or other obligations to any other creditor or party in interest in their respective roles as BGH Advisory Board; and shall in no event be liable or otherwise responsible to any other person, firm or corporation by reason of any action or failure to act in their respective capacities as BGH Advisory Board, except for conduct constituting gross negligence or willful misconduct for which they would otherwise be liable in the absence of this Article.

### 7.1.4 Successors to BGH Advisory Board

In the event a BGH Advisory Board member no longer desires to serve on the BGH Advisory Board, he/she shall give written notice of the effective date thereof to the remaining BGH Advisory Board members who shall thereupon elect a successor.  Any successor so elected must have no conflict of interest in fulfilling their responsibilities.

### 7.1.5 Indemnification of BGH Advisory Board

Each BGH Advisory Board member  shall be indemnified  and receive reimbursement from the Estate Property against and from any and all loss, liability, cost, damage or expense which he, she or it may incur or sustain in the exercise and performance of any of his, her or its duties and responsibilities as such BGH Advisory Board member under this Plan unless such loss, liability, cost, damage or expense shall be incurred or sustained as the result of the BGH Advisory Board member's gross negligence or willful misconduct.

## 7.2 The BGH Plan Administrator

### 7.2.1 Responsibilities of the BGH Plan Administrator

The BGH Plan Administrator will have those responsibilities created by this Plan upon the terms and conditions summarized herein and will, for the benefit of the Class 1 and Class 3 claimants exercise the rights and powers vested in it by this Plan in the same manner, and use the same degree of care and skill in their exercise, as a prudent person would exercise and use under the circumstances in the conduct of its own affairs, and further agrees to receive and disburse all of the Liquidating Plan Proceeds in accordance with the terms hereof.  More specifically, the BGH Plan Administrator is empowered to:

(a)     perform all of the obligations and agreements of the Plan provided for herein;

(b)     keep and maintain bank accounts in the name of the Estate for the benefit of the Beneficiaries into which the BGH Plan Administrator shall deposit all proceeds (unless such proceeds shall theretofore have been invested in Permitted Investments pursuant to Article 7.2 of the Plan) resulting from the initial receipt or from the sale or other disposition of, or from the income resulting from, all or any part of the Estate Property.  The BGH Plan Administrator shall not permit any person other than a designated representative of the BGH Plan Administrator to have authority to make withdrawals from, or to issue drafts against, any accounts maintained with any bank, unless such bank has been furnished a copy of this Plan;

(c)     commence or continue Estate Litigation or Recovery Actions for the benefit of the Class 3 beneficiaries hereunder for the purpose of liquidating the Estate Property or maximizing the value of the Estate;

(d)     to object to any claims (disputed or otherwise), and to compromise or settle any claims prior to objection without supervision or approval of the Court, free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the Court, and the guidelines and requirements of the United States Trustee, other than those restrictions expressly imposed by the Plan or the Confirmation Order; and/or to seek Court approval, on a quarterly basis, for any claims settlements made within such quarterly period or otherwise;

(e)     market, negotiate and enter into and perform agreements for the sale or other disposition of the Assets as may be required by the Plan or the United States Bankruptcy Court; as may be required by the Plan;

(f)     to seek a determination of tax liability under Section 505 of the Bankruptcy Code  and to pay taxes, if any, related to the Debtor, Estate or the sale of Assets of the Debtor or Estate;

16

(g)    collect, receive and give receipt for all sums of money or other property due to the Debtor or Estate and, if necessary, foreclose upon any security agreement or the like securing any liability or obligation owed to the Debtor or the Estate or liquidate any securities held by the BGH Plan Administrator as a pledge and/or take any other actions necessary to the collection, receipt or disposition of any Estate Property;

(h)    compromise or settle disputes with respect to debt obligations owed to the Debtor or the Estate;

(i)    execute and deliver all releases, satisfactions and termination statements as may be required in connection with full payment of any debt obligation secured by any lien or security interest;

(j)    execute and deliver all documentation, information and notices, perform any final audits or examinations, and otherwise perform tasks as necessary to terminate all Employee Programs in conformity with the rules and regulations of ERISA to the extent ERISA is applicable to any program which is part of the Debtor's Employee Programs;

(k)    enter into financing agreements to the extent necessary to supplement the cash flow of the Estate so as to allow the BGH Plan Administrator to maximize the liquidation value of the Assets, maximize the amounts collected pursuant to Estate Litigation or Recovery Actions and minimize amounts paid to settle Liabilities, including but not limited to disputes;

(l)    engage and compensate professionals, including attorneys, accountants, investment advisors and others, to assist the BGH Plan Administrator in carrying out its duties hereunder which professionals include, without limitation, those retained to assist the BGH Plan Administrator in any litigation related to the liquidation of the Assets as well as Estate Litigation  or the settlement of the Liabilities.  All professionals employed by the BGH Plan Administrator shall be compensated by the Estate.

(m)    The BGH Plan of Administrator shall file or caused to be filed all required tax returns for the Estate and pay any and all taxes, if any, when due from the Estate property.

### 7.2.2 Compensation of the BGH Plan Administrator

In lieu of any commission or fees which may be fixed by applicable law for trustees or fiduciaries (and which are hereby waived by the BGH Plan Administrator), the BGH Plan Administrator and his agents, accountants, professionals and any other persons retained by him (collectively, "Retained Professionals") shall be compensated from Estate Property based on his standard hourly rate then in effect (and the standard hourly rates of others in his office then in effect, as applicable), plus reimbursement of reasonable and

necessary expenses shall also be compensated.  The BGH Plan Administrator shall be entitled to reimbursement from the Estate Property of all out-of-pocket expenses, and costs and expenses of distributing to the Beneficiaries the Liquidating Plan Proceeds. The BGH Plan Administrator shall exercise its own business judgment to assure that the duties of the BGH Plan Administrator are performed on the most economical basis to the Estate.  The BGH Plan Administrator and Retained Professionals shall not be required to make application for reimbursement from the Bankruptcy Court and under the guidelines established pursuant to reimbursement as approved by the United States Bankruptcy Court, subject to the limitations that would apply under 11 U.S.C. § 326(a) as if the BGH Plan Administrator has been appointed under 11 U.S.C. § 1104 in the Chapter 11 Case. Such reimbursement shall be paid from the Estate Property as of each month end consummated during the reporting period.

### 7.2.3 Claims Against the BGH Plan Administrator

In accepting this assignment, the BGH Plan Administrator acts solely as Advisor hereunder, and all persons having any claim against the BGH Plan Administrator in connection with its performance of its rights, powers and duties as such BGH Plan Administrator shall only look to the Estate Property and the Liquidating Plan Proceeds for payment or satisfaction thereof.

### 7.2.4 Commingling of Estate Property and Liquidating Plan Proceeds

The BGH Plan Administrator shall not commingle any of the Estate Property and Liquidating Plan Proceeds with its own property or the property of any other person.

### 7.2.5 Maintenance of Books and Records

The BGH Plan Administrator shall maintain records and books of account relating to the Estate Property.  The BGH Plan Administrator shall prepare, as soon as practicable after the end of each calendar year and each calendar quarter, a financial statement. In addition, at least annually, the BGH Plan Administrator will furnish a report showing all sales or other dispositions of Assets, proceeds received from settlements or judgment and payment thereon of Assets or proceeds received relating to Estate Litigation or Recovery Actions, settlement of Liabilities and expenses relating to the operation of the Estate) consummated during the reporting period.  The BGH Plan Administrator shall file or cause to be filed all required tax returns for the Estate and pay any and all taxes, if any, when due from the Estate Property.

### 7.2.6 Reliance on Others

The BGH Plan Administrator may rely upon and shall be protected in acting or refraining from acting upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper person or persons, provided, however, that the BGH Plan Administrator shall be under a duty to have

18

examined the same to determine whether or not such writings conform to the requirements of this Plan.

### 7.2.7 Reliance by persons dealing with the BGH Plan Administrator

In the absence of actual knowledge to the contrary, any person dealing with the Debtor and the Estate shall be entitled to reply on the authority of the BGH Plan Administrator to act on behalf of the Estate and the Debtor and shall have no obligation to inquire into the existence of such authority.

### 7.2.8 Liability for Errors and Omissions

The BGH Plan Administrator and its agents shall not be liable for any error of business judgment or with respect to any action taken or omitted to be taken by it in its capacity as BGH Plan Administrator, unless it shall be proved that the BGH Plan Administrator or its agents shall have been grossly negligent or shall have acted with willful misconduct in ascertaining the pertinent facts or in performing any of its rights, powers or duties according to this Plan.  In the event such liability is proven, the Class 1 and Class 3 beneficiaries shall be entitled to reimbursement of their reasonable costs, including attorney's fees. The BGH Plan Administrator makes no representations as to: (i) the value or condition of the Estate Property or any part thereof, (ii) the dollar amount, if any, which may be collected as a result of pursuing Estate Litigation or Recovery Actions, (iii) the amount at which Liabilities may be settled, and (iv) the security afforded by this Plan, or as to the validity, execution (except its own execution), enforceability, legality or sufficiency of this Plan, and the BGH Plan Administrator shall incur no liability or responsibility in respect of such matters.

### 7.2.9 Indemnification of BGH Plan Administrator

The BGH Plan Administrator shall be indemnified by and receive reimbursement from the Estate Property (whether or not distributed to the Beneficiaries) against and from any and all loss, liability, cost, damage or expense which it may incur or sustain in the exercise and performance of any of his its powers and duties as the BGH Plan Administrator pursuant to this Plan unless such loss, liability, cost, damage or expense shall be incurred or sustained as a result of the BGH Plan Administrator's gross negligence or willful misconduct.  Other than claims by the BGH Plan Administrator for indemnification or reimbursement resulting from its own gross negligence or willful misconduct, all claims of the BGH Plan Administrator for indemnification or reimbursement under this Article 7.1.8 shall be first offset by the BGH Plan Administrator against any portion of the Estate Property or, at the BGH Plan Administrator's discretion, against any payment or distribution made or to be made in accordance with Article VIII of this Plan.

**7.2.10 Resignation of BGH Plan Administrator**

The BGH Plan Administrator may resign the Administration of the Estate at any time by giving at least thirty (30) days prior written notice to Lawrence C. Bolla and/or Kirk Burkley, such resignation to be effective at least thirty (30) days after the date of such notice.

**7.2.11 Removal of BGH Plan Administrator**

The BGH Advisory Board upon petition to the Court may (a) remove the BGH Plan Administrator for cause, at any time, upon the BGH Plan Administrator's violation of any provision of this Plan, and (b) upon the removal of the BGH Plan Administrator for cause or upon its resignation, select a successor to the BGH Plan Administrator and execute a supplement to this Plan appointing the successor BGH Plan Administrator, which supplement shall be binding upon all Beneficiaries then holding beneficial interests in the Estate Property and Liquidating Plan Proceeds.  The indemnification afforded to the BGH Plan Administrator as set forth in Section 7.2.9 above as well as the provisions of sections 7.2.3, 7.2.6 and 7.2.8 shall indefinitely survive the removal of the BGH Plan Administrator.  Further, the BGH Plan Administrator shall be entitled to reasonable compensation for fees and expenses incurred as a result of such removal as provided for under section 7.2.2.

**7.2.12 Appointment by Court of Successor to BGH Plan Administrator**

Following the resignation or removal of the BGH Plan Administrator, Lawrence C. Bolla and/or Kirk Burkley shall petition the Court to appoint a successor as BGH Plan Administrator.  The Order appointing the successor Plan Administrator shall provide, inter alia, that such successor Plan Administrator shall act in all respects in accordance with the terms and conditions of the Plan of Reorganization.

**7.2.13 Requirements to be Fulfilled by Successor to BGH Plan Administrator**

Any successor BGH Plan Administrator shall execute and deliver to the Class 1 and Class 3 claimants and to the predecessor Plan Administrator an instrument accepting such appointment, the terms and conditions of which shall be the same as those contained in this Plan, and thereupon such Plan Administrator, without further act, shall be vested with all the estates, properties, rights, powers, duties and trusts of the predecessor Plan Administrator in the Estate and the Debtor with like effect as if originally named as Plan Administrator herein; but nevertheless, upon the written request of such Plan Administrator, the predecessor Plan Administrator shall (i) execute, acknowledge and deliver such instruments of conveyance and further assurances and do such other things as may reasonably be required for more fully and certainly vesting and confirming unto said Plan Administrator all the right, title and interest of the predecessor Plan Administrator in and to the Estate Property; (ii) duly assign, transfer, deliver, account for and pay over to such Plan Administrator any property or money then held by such predecessor Plan Administrator; and (iii) deliver to such Plan Administrator any and all

20

records, or copies thereof in respect of the Estate which the predecessor Plan Administrator may have.

### 7.3 Permitted Investments of Estate Property and Liquidating Plan Proceeds

#### 7.3.1 Types of Permitted Investments

Monies constituting part of the Estate Property shall, to the extent permitted by applicable law, be invested by the BGH Plan Administrator: (a) in debt securities issued by the United States of America or by any agency or instrumentality thereof with a maturity of six (6) months or less, or (b) in certificates of deposit issued with a maturity of six (6) months or less by banks which are members of the Federal Reserve System having a capital stock and surplus aggregating at least $100,000,000 or (c) commercial paper rated no less than A-1, P-1 or F-1, money market accounts such as Vanguard or Fidelity provided however, that (i) each Permitted Investment shall be held solely in the name of the BGH Plan Administrator as Plan Administrator for the Estate, (ii) to the extent practicable, the BGH Plan Administrator shall take physical possession of all such securities and secure them in a safe deposit box registered solely in the name of the BGH Plan Administrator as Plan Administrator for the Debtor, and (iii) no Permitted Investment may be made unless the BGH Plan Administrator shall furnish the bank through which such Permitted Investment is made or in whose certificates of deposit such Permitted Investment is made with a copy of this Plan and such bank shall have acknowledged to the BGH Plan Administrator in writing that upon the maturity of such Permitted Investment the proceeds thereof; if not reinvested in a Permitted Investment in accordance with the instructions of the Plan Administrator, shall be deposited solely in a bank account of the Estate.

#### 7.3.2 Types of Bank Accounts Permitted

The BGH Plan Administrator may, in order to implement the distribution provisions of the Plan or because an anticipated distribution date or other cash commitment does not make a Permitted Investment practical, deposit Cash in FDIC or FSLIC insured demand deposit accounts at any bank or trust company, which has a capital stock and surplus aggregating at least $100,000,000.

#### 7.3.3 Terms of Permitted Investments

All Permitted Investments shall be on terms which will allow distributions to be made consistent with the distribution requirements of Article VIII of this Plan and shall mature in such amounts and at such times as may be necessary to provide funds when needed to make payments, as required by the BGH Plan Administrator on behalf of the Estate as the case may be.

### 7.3.4 Valuation and Redemption of Permitted Investments

Any of the foregoing investments purchased with any of the Estate Property or Liquidating Plan Proceeds shall be deemed a part of the Estate Property and, for the purposes of determining the value of the Liquidating Plan Proceeds, the securities shall be valued at their market value. Any earned interest from Permitted Investments shall accrue ratably for the benefit of the Beneficiaries and shall be included in the Estate Property. At such time as it shall be necessary that some or all of the Permitted Investments be redeemed or sold in order to raise monies to comply with the provisions of the Plan, the BGH Plan Administrator shall effect such redemption or sale, in such manner and at such time as the BGH Plan Administrator, in its discretion, deems reasonable.

## 7.4 Amendment to Plan Prior to Effective Date

Subject to further order of the Court, the Debtor as Plan proponent pursuant to Section 1121 of the Bankruptcy Code retains the exclusive right to amend the Plan and solicit acceptances thereof until the Effective Date.

## 7.5 Cancellation of Equity Interests

On the Effective Date, all certificates and other documents evidencing Equity Interests in the Debtor shall be canceled.

## 7.6 Creditors' Committee

As of the Effective Date, the Creditors' Committee shall dissolve, and its members shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from the Reorganization Case. The retention and employment of the Professionals retained by the Creditors' Committee shall terminate as of the Effective Date, provided, however, that the Creditors' Committee shall exist, and its Professionals shall be retained, after such date with respect to (a) applications Filed pursuant to sections 330 and 331 of the Bankruptcy Code, (b) motions seeking the enforcement of the provisions of the Plan or the Confirmation Order, and (c) any matter where Creditors' Committee Professionals are retained by the BGH Plan Administrator and (d) any matter pending as of the Effective Date until such matter is resolved by a Final Order.   Any fees incurred by the Creditors' Committee's Professionals after the Effective Date shall be paid by the BGH Plan Administrator without the need to File any fee applications or obtain the Court's approval.

# ARTICLE VIII

## DISTRIBUTIONS UNDER THE PLAN

### 8.1 Initial Distribution Date

On or before the Initial Distribution Date, the BGH Plan Administrator shall, as far as practicable, transfer all estate property to the Creditor Liquidation Fund. The Initial Distribution Date will be determined by the BGH Plan Administrator based on a review and evaluation of the projected cash needs of the estate in comparison to the cash balances portion of the Estate Property as well as considering the balances and status of the Creditor Liquidation Fund and the Disputed Reserves. In determining the amount of any distribution, the BGH Plan Administrator is not required to fund, in cash, amounts for Disputed Claims as set forth in Article 8.2 of the Plan as adequate book only reserves have been established. As soon as the Initial Distribution Date has been determined, the BGH Plan Administrator shall make, after reserves provided for in Section 8.2 below, the distributions required to be made under the Plan

### 8.2 Disputed Reserves

The BGH Plan Administrator shall establish reserves for distributions in respect of Disputed Claims, as follows:

#### 8.2.1 Establishment of Disputed Reserves

On the Initial Distribution Date, and each subsequent date as to which Distributions are to be made in accordance with the Plan, and after making all Distributions required to be made on such date under the Plan, the BGH Plan Administrator shall establish, in the records maintained for the Estate a separate Disputed Reserve record for each of the Disputed Claims, each of which Disputed Reserves shall be administered by the BGH Plan Administrator. It is not necessary to create separate bank accounts for each Disputed Reserve established for each Disputed Claim as the records developed and maintained by the BGH Plan Administrator are adequate and sufficient. Pending final termination of such Disputed Claim, the BGH Plan Administrator shall establish such reserves for Distribution on account of each Disputed Claim in amounts equal to the amount the holder of such claim or claims otherwise would have been entitled to receive as of such date had such Disputed Claim been an allowed claim in the full amount of the Claim asserted.

#### 8.2.2 Maintenance of Disputed Reserves

Each Disputed Reserve shall be closed and extinguished by the BGH Plan Administrator when all Distributions and other dispositions of Cash or other property required to be made hereunder will have been made in accordance with the terms of the Plan.

23

## 8.3 Quarterly Distributions After Initial Distribution

As of each Quarterly Distribution Review Date after the Initial Distribution Date, the BGH Plan Administrator will determine, based on a review and evaluation of the projected cash needs of the Estate in comparison to the cash balances portion of the Estate Property whether an additional distribution can be made and if it is determined that a distribution is to be made shall make such distribution as soon as reasonably practicable following such quarterly Distribution Review Date.  In determining the amount of any Distribution made at any time, consideration will be made reserving amounts for Disputed Claims as set forth in Article 8.2 of the Plan.  Any Distribution that is not made on the Initial Distribution Date or on any other date specified herein because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be included by the BGH Plan Administrator in the Disputed Reserve pursuant to Article 8.2 and Distributed on the first date on which a Distribution is made after such Claim is Allowed.  No interest shall accrue or be paid on the unpaid amount of any Distribution paid in accordance with this section.

## 8.4 Record Date for Distributions

The BGH Plan Administrator shall have no obligation to recognize any Claim occurring after the Record Date.  In making any Distribution with respect to any Claim, the BGH Plan Administrator shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim Filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that are known to the BGH Plan Administrator as of the Record Date.

## 8.5 Delivery of Distributions

### 8.5.1 General Provisions; Undeliverable Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the BGH Plan Administrator at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim Filed by such holder or (b) the last known address of such holder if no proof of Claim is Filed or if the BGH Plan Administrator have been notified in writing of a change of address.  If any Distribution is returned as undeliverable, the BGH Plan Administrator may, in its discretion, make such efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made as the BGH Plan Administrator deems appropriate, but no Distribution to any holder shall be made unless and until the BGH Plan Administrator has determined the then-current address of the holder, at which time the Distribution to such holder shall be made to the holder without interest.  Amounts in respect of any undeliverable Distributions made by the BGH Plan Administrator shall be returned to, and held in trust by, the BGH Plan Administrator until the Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code as set forth below in this Section.  The BGH Plan Administrator shall have the discretion to determine how to

24

make Distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

### 8.5.2 Minimum Distributions

Notwithstanding anything herein to the contrary, if a Distribution to be made to a holder of an Allowed Claim on the Initial Distribution Date or any subsequent date for Distributions (other than the final Distribution Date) would be $25 or less in the aggregate, no such Distribution will be made to that holder.

### 8.5.3 Unclaimed Property

Except with respect to property not Distributed because it is being held in a Disputed Reserve or because it represents a minimum Distribution under section 8.5.2 above, Distributions that are not cashed by the claimant by the expiration of six (6) months from the date of the distribution check shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Estate, and the Claims with respect to which those Distributions are made shall be automatically canceled. After the expiration of that six month period, the claim of any Entity to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require the BGH Plan Administrator to attempt to locate any holder of an Allowed Claim. All funds or other property that vests or revests in the Estate pursuant to this Section shall be distributed by the BGH Plan Administrator to the other holders of Allowed Claims in the Class of which the creditor to whom the Distribution was originally made is a member in accordance with the provisions of the Plan.

## 8.6 Surrender of Canceled Instruments and Securities

### 8.6.1 Generally

Except as set forth in Article 8.6 hereof, as a condition precedent to receiving any Distribution hereunder on account of an Allowed Claim evidenced by instruments, securities or other documentation canceled pursuant to Article 7.5 hereof, the holder of such Claim shall tender such instrument, security or other documentation evidencing such Claim to the BGH Plan Administrator (except as set forth in Article 8.5.2 hereof). Any distributions pursuant to the Plan on account of any Claim evidenced by such instruments, securities or other documentation shall, pending such surrender, be treated as an undeliverable Distribution in accordance with Article 8.5.1 hereof.

### 8.6.2 Failure to Surrender Canceled Instruments

If any holder of an Allowed Claim evidenced by instruments, securities, or other documentation canceled pursuant to Article 7.4 hereof, fails to surrender such instrument, security or other documentation or comply with the provisions of Article 8.6 hereof within one year after the Effective Date, its Claim for a distribution under the Plan on

account of such instrument, security, or other documentation shall be discharged, and such holder shall be forever barred from asserting such Claim against the Estate or its property.  In such case, any property held on account of such Claim shall be disposed of pursuant to the provisions set forth in Article 8.5.1 hereof.

## 8.7 Lost, Stolen, Mutilated or Destroyed Instrument or Security

Any holder of an Allowed Claim evidenced by instruments, securities or other documentation canceled pursuant to Section 7.5 hereof that has been lost, stolen, mutilated, or destroyed, shall, in lieu of surrendering such instrument, security or documentation: (a) deliver to the BGH Plan Administrator  (i) an affidavit of loss reasonably satisfactory to the BGH Plan Administrator setting forth the unavailability of such instrument, security, or other documentation and (ii) such additional security or indemnity as may reasonably be requested by the BGH Plan Administrator to hold the BGH Plan Administrator harmless from any damages, liabilities, or costs incurred in treating such Entity as a holder of an Allowed Claim and (b) satisfy any other requirement under any other relevant document. Upon compliance with this Article 8.7 by a holder of an Allowed Claim evidenced by such instrument, security, or other documentation, such holder shall, for all purposes under the Plan, be deemed to have surrendered such instrument, security, or other documentation.

## 8.8 Manner of Cash Payments Under the Plan

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the BGH Plan Administrator or by wire transfer from a domestic bank, at the option of the BGH Plan Administrator.

## 8.9 Time Bar to Cash Payments by Check

Checks issued by the BGH Plan Administrator on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Article 8.9 shall be made directly to the BGH Plan Administrator by the holder of the Allowed Claim to whom the check was originally issued.  Any Claim in respect of such voided check shall be made in writing on or before the later of the first anniversary of the Effective Date or the first anniversary of the date on which the Claim at issue became an Allowed Claim.  After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the BGH Plan Administrator as unclaimed property in accordance with section 347(b) of the Bankruptcy Code.

## 8.10 Limitations on Funding of Disputed Reserves

Except as expressly set forth in the Plan, neither the Debtor, the Estate nor the BGH Plan Administrator shall have any duty to fund the Disputed Reserves.

**8.11 Compliance with Tax Requirements**

In connection with making Distributions under this Plan, to the extent applicable, the BGH Plan Administrator shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The BGH Plan Administrator may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the BGH Plan Administrator to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable distribution in accordance with Article 8.5.1.

**8.12 No Payments of Fractional Cents**

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole cent.

**8.13 Interest on Claims**

Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim. Except as expressly provided herein or in a Final Order of the Court, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or other similar charges.

**8.14 No Distribution in Excess of Allowed Amount of Claim**

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

**8.15 Setoff and Recoupment**

The BGH Plan Administrator may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any of the Debtor, the Estate, or the BGH Plan Administrator may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the

Estate, or the BGH Plan Administrator of any right of setoff or recoupment that any of them may have against the holder of any Claim.

## ARTICLE IX

## DISPUTED CLAIMS

### 9.1 Objection Deadline

All objections to Disputed Claims shall be Filed and served upon the holders of each such Claim not later than 120 days after the Effective Date, unless otherwise ordered by the Court after notice and a hearing.

### 9.2 Estimation of Claims

At any time, the BGH Plan Administrator may request that the Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the BGH Plan Administrator have previously objected to such Claim or whether the Court has ruled on any such objection, and the Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtor or the BGH Plan Administrator, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

### 9.3 Prosecution of Objections and Requests for Estimation

Except as otherwise ordered by the Court, responsibility for the Filing, litigation, settlement, or withdrawal of all objections to Disputed Claims or requests for estimation thereof, including objections and estimation requests pending on the Effective Date, shall be the responsibility of the BGH Plan Administrator, and the costs of such litigation, settlement, or withdrawal shall be borne by the Estate.  The Debtor or the BGH Plan Administrator, as applicable, shall serve a copy of each objection upon the holder of the Disputed Claim to which the objection is being made as soon as practicable, but in no event later than 120 days after the Effective Date unless such date is extended by order of the Court.  From and after the Confirmation Date, all objections shall be litigated to a Final Order, except to the extent the BGH Plan Administrator elects to withdraw any such objection or the BGH Plan Administrator and the claimant elect to compromise, settle or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim without approval of the Court.

**9.4 No Distributions Pending Allowance**

Notwithstanding any other provision hereof, unless ordered otherwise by a Final Order, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of the Allowed portion of the Claim unless and until the Disputed portion of the Claim is Allowed.

# ARTICLE X

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**10.1 Acceptance of Executory Contracts and Unexpired Leases**

On the Effective Date, all Executory Contracts and Unexpired Leases identified on Exhibit 10.1A attached hereto and made a part hereof shall be deemed accepted as of the Effective Date.

**10.2 Rejection of Executory Contracts and Unexpired Lease**

On the Effective Date, all Executory Contracts and Unexpired Leases not previously assumed by Court Order and/or not identified on Exhibit 10.1A shall be deemed rejected as of the Effective Date.

**10.3 Approval of Rejection of Executory Contracts and Unexpired Leases**

Entry of the Confirmation Order shall constitute the approval, pursuant to Section 365(a) of the Bankruptcy Code, of the rejection of the Executory Contracts and Unexpired Leases rejected as of the Effective Date pursuant to the Plan.

**10.4 Approval of Acceptance of Executory Contracts and Unexpired Leases**

Entry of the Confirmation Order shall constitute the approval, pursuant to Section 365(a) of the Bankruptcy Code of the acceptance of the Executory Contracts and Unexpired Leases accepted as of the Effective Date pursuant to the Plan.

# ARTICLE XI

## ABANDONMENT OF PROPERTY

### 11.1 Abandonment of Property Under the Plan

Each of the assets, listed on Exhibit 11.1A attached hereto, shall be deemed abandoned by the Debtor as of the Effective Date, and the Confirmation Order shall constitute the Court's approval of such abandonment pursuant to section 554(a) of the Bankruptcy Code.

### 11.2 Abandonment by BGH Plan Administrator

The BGH Plan Administrator shall have the right to abandon in any commercially reasonable manner (including abandonment or donation to a charitable organization of the BGH Plan Administrator's choice) any other property that the BGH Plan Administrator reasonably concludes is of no benefit to the Class 1 or Class 3 beneficiaries or that it reasonably determines, at the conclusion of Distributions or dissolution of the Estate, to be too impractical to Distribute. Such abandonment shall be (a) affected by a separate order of the Court on proper notice to the relevant parties and (b) be deemed to have been made under the Plan.

### 11.3 Abandonment Claims

If the abandonment of any asset pursuant to the Plan (including those abandoned pursuant to Section 11.2) and the Confirmation Order results in damages to a non-debtor party, any Claim for such damages shall be forever barred and shall not be enforceable against the Debtor, the Estate, the BGH Plan Administrator, or their properties, successors, and assigns, unless a proof of claim is Filed and served upon counsel for the BGH Plan Administrator on or before thirty (30) days after the later to occur of (a) the entry of the Confirmation Order or (b) the date of the entry by the Court of an order authorizing abandonment of such asset.

# ARTICLE XII

## CONDITIONS PRECEDENT TO CONFIRMATION
## OF THE PLAN AND THE EFFECTIVE DATE

### 12.1 Conditions Precedent to the Confirmation of the Plan

It shall be a condition precedent to the confirmation of the Plan, that the Confirmation Order, in form and substance acceptable to the Debtor, shall have been entered by the Court.

### 12.2 Conditions Precedent to the Effective Date of the Plan

The Plan shall not become effective and the Effective Date shall not occur unless and until the following conditions shall have been satisfied or waived in accordance with Article 12.3:

(a)      Confirmation Order. The Confirmation Order shall be a Final Order.

(b)      Plan. After the entry of the Confirmation Order, no modifications shall have been made to the Plan except in accordance with its provisions with respect to its modification.

## 12.3 Waiver of Conditions Precedent

Each of the conditions precedent in Article 12.2 may be waived or modified, in whole or in part, by the Debtor upon the consent of the Creditors' Committee.  Any such waiver or modification of a condition precedent in Article 12.2 may be affected at any time, without notice (other than to the Creditors' Committee), without leave or order of the Court, and without any other formal action.

## ARTICLE XIII

## EFFECTS OF CONFIRMATION

### 13.1 Vesting of Assets

(a)      As of the Effective Date, title to the property of the Estate shall vest and/or re-vest in the Debtor, subject to the BGH Plan Administrator's obligation to administer, liquidate and distribute the property in accordance with the terms of this Plan.

(b)      As of the Effective Date, all assets of the Debtor shall be free and clear of all claims except as provided for in the Plan or the Confirmation Order.

### 13.2  Release of Assets

Until the Effective Date, the Court shall retain jurisdiction of the Debtor and its assets and properties.  Thereafter, jurisdiction of the Court shall be limited to the subject matter set forth in Article XVI hereof.

### 13.3  Binding Effect

Except as otherwise provided in section 1121(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

### 13.4  Terms of Injunctions or Stays

Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during the Chapter 11 case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and

in existence on the confirmation date, shall remain in full force and effect until the closing of the Chapter 11 case.

## 13.5 Estate Litigation

Except as otherwise provided in the Plan, on and after the Effective Date, the BGH Plan Administrator, on account of the Debtor, shall have the exclusive right to enforce any and all Estate Litigation against any person.  The BGH Plan Administrator, on account of the Debtor, may pursue, abandon, or release any Estate Litigation as it deems appropriate, without the need to obtain approval or any other further relief from the Court.  The BGH Plan Administrator, on account of the Debtors, in its sole discretion, may offset any such claim held against a person, against any payment due such person under the Plan.

## 13.6 Injunction

Except as otherwise provided in the Plan, the Confirmation Order or a separate Order of the Court, as of the Effective Date, all entities that have held or currently hold or may hold directly, derivatively or otherwise, a claim or equity interest or other right that is terminated or otherwise subject to treatment pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions on account of any such claim or equity interest:

      (a)      Commencing or continuing in any manner, any action or other proceeding against the Debtor or the estate or its properties or interest in properties;

      (b)      Attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or the Estate or its properties or interests in properties;

      (c)      Creating, perfecting or enforcing any lien or other encumbrance against the Debtor or the Estate or its properties and interest in properties;

      (d)      Asserting a setoff, right off subrogation, or recoupment of any kind against the Debtor or the Estate, or its properties or interests in properties; and

      (e)      Commencing or continuing any action in any manner or in any place, with respect to Estate Property or against any of the Released Parties or that otherwise does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## 13.7 Injunction Against Interference with Plan

Upon the entry of the Confirmation Order, all holders of claims and equity interests and other parties in interest along with their respective present, future or former employees, agents, officers, directors or principals shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**13.8  Retention and Preservation of Claim Objections and Estate Litigation**

Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, upon entry of the Confirmation Order, the BGH Plan Administrator shall retain the right to object to all claims and interests asserted against the Debtor.  Upon entry of the Confirmation Order, the BGH Plan Administrator shall also have the exclusive right to prosecute any and all of the Debtors Estate Litigation, which includes, without limitation:  (1) Preference actions under Section 547 of the Bankruptcy Code against those parties receiving payments from the Debtors within ninety (90) days or one year prior to the Petition Date (these potential preference defendants are listed on Exhibit 13.8-A of the Plan); (2)  Any and all Claims or Causes of Action the Debtor has against Brownsville Property Corporation, Inc. including, but not limited to, any Claims or Causes of Action for breach of contract, contribution, indemnification, or reimbursement arising out of or related to the Stock Purchase Agreement dated March 1, 2005; (3) Any and all Claims or Causes of Action the Debtor has against Brownsville Health Services Corporation including, but not limited to, the Debtor's claim for turnover of property for sums previously lent by the Debtor to Brownsville Health Services Corporation as set forth in Adversary Proceeding No. 06-2666, and any Claims or Causes of Action for breach of contract, contribution, indemnification, or reimbursement arising out of or related to the Stock Purchase Agreement dated March 1, 2005; (4) Any and all Claims or Causes of Action the Debtor has against West Point Health Corporation including, but not limited to, the Debtor's claim for turnover of property for sums previously lent by the Debtor to West Point Health Corporation as set forth in Adversary Proceeding No. 06-2666, and any Claims or Causes of Action for breach of contract, contribution, indemnification, or reimbursement arising out of or related to the Stock Purchase Agreement dated March 1, 2005; (5) All Claims and Causes of Action disclosed in the Debtor's schedules and stated in the Financial Affairs which are incorporated herein by reference; including any action against the Debtor's former officers, directors and/or shareholders for breaches of their fiduciary duties and/or other wrongful conduct; and (6)  Any and all Claims and Causes of Actions that the Debtor holds preconfirmation including, but not limited to claims for unpaid accounts receivable, breach of contract, contribution, indemnification and fraudulent transfer, shall vest or revest in the reorganized Debtor, except as otherwise provided in this Plan.

Unless a Claim or Cause of Action against a creditor or other entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtor and the BGH Plan Administrator expressly reserve such claim or cause of action for later adjudication by the BGH Plan Administrator  (including without limitation, claims and causes of action not specifically identified or which the Debtor and/or the BGH Plan Administrator may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances which may change or be different from those which the Debtor now believes to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or causes of action upon or after the confirmation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except for such claims or causes of action have been released in the Plan or any other Final Order.

## ARTICLE XIV

## RELEASES, INJUNCTIONS AND WAIVERS OF CLAIM

**14.1  Release of Creditors' Committee and Debtor**

On the Effective Date, all entities shall be conclusively presumed to have released the following parties with respect to any actions taken by the Released Parties following the filing of the reorganization case (but solely to the extent set forth below): (a) the Creditors' Committee and the present and former members thereof, and (b) accountants, advisors and counsel for the Committee and the Debtor (each of the foregoing, a "Released Party" and together, the "Released Parties"), from any Claim or Cause of Action based on, arising from, or in any way connected with, (A) the Reorganization Case (including, without limitation, any actions taken and/or not taken with respect to the administration of Estate or the operation of the business of the Debtor); (B) the Plan or the Distributions received thereunder; and (C) the negotiation, formulation, and preparation of the Plan, except to the extent any such claim or Cause of Action against any Released Party arises solely as a direct result of that Released Party's fraud or willful misconduct. In all respects, each of the Released Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

Notwithstanding anything to the contrary contained in the Plan, none of the releases provided herein shall prejudice or otherwise affect the right of any party in interest to object to (i) any applications for compensation filed by Professionals or (ii) any request seeking compensation under section 503 of the Bankruptcy Code.

**14.2 Release of Released Parties by the Debtor**

Without limiting any other applicable provisions of Article 14, as of the Effective Date, the Debtor on behalf of itself, its Estate, and its respective successors, assigns, and any and all Entities who may purport to claim by, through, for, or because of, them, shall be deemed to have unconditionally released and be permanently enjoined from any prosecution or attempted prosecution of any and all Causes of Action, including, without limitation, any Recovery Actions, that they have, may have, or claim to have, that are property of, assertable on behalf of, or derivative of the Debtor or its Estate, against the Released Parties (but solely in their capacity as Released Parties).

**14.3 Release by Holders of Claims**

On and after the Effective Date, each holder of a Claim against the Debtor and all other entities shall be deemed to have released unconditionally all Estate Property and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, Recovery Actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Person or Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part upon any act or

34

omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, except to the extent necessary to enforce the provisions of the Plan.

**14.4 Costs of Asserting Claims Against Released Parties**

None of the Debtor, the BGH Plan Administrator, and none of their successors or assigns, shall fund or be obligated to fund (whether directly or indirectly) the costs of pursuing against any of the Released Parties a Claim or Cause of Action or Recovery Action, that is released by the Plan.

## ARTICLE XV

## RETENTION OF JURISDICTION

**15.1 Retention of Jurisdiction**

Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction of all matters arising out of or relating to the Reorganization Case, the Plan, the Confirmation Order, and the Estate pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) To resolve any matters relating to the assumption and assignment or rejection of executory contracts or unexpired leases, and to hear, determine and, if necessary, liquidate any Claims resulting therefrom;

(b) To decide and resolve any and all motions, adversary proceedings, including Recovery Actions, applications, contested matters and any other matters, whether pending as of the Effective Date or brought thereafter in accordance with the terms hereof;

(c) To consider and rule on the compromise and settlement of any Claim against, or Cause of Action on behalf of, the Debtor or the Estate;

(d) To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein, and resolve any disputes concerning any such Distributions;

(e) To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (including any Administrative Expense Claim), and to resolve any and all objections to the Disputed Claims;

(f) To hear and determine any and all applications for the allowance of compensation of Professional for professional services rendered and expenses incurred prior to the Confirmation Date;

(g) To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan;

(h) To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency, in the Plan or in any order of the Court as may be necessary to carry out the purposes and intent of the Plan and to implement and effectuate the Plan;

(i) To resolve any cases, controversies, suits or disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or any person's or Entity's obligations incurred in connection with the Plan;

(j) To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(k) To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, revoked, reversed or vacated;

(l) To enforce remedies upon any default under the Plan;

(m) To enforce, interpret, and determine any disputes arising in connection with any orders, stipulations, judgments, and rulings entered in connection with the Reorganization Case (whether or not the Reorganization Case have been closed);

(n) To resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan, or any Estate's obligations incurred in connection herewith, including the regulation of discovery disputes related to Estate Litigation and the enforcement of compliance with depositions requested by the BGH Plan Administrator pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure;

(o) To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the BGH Plan Administrator, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

(p) To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person or Entity with the consummation of the Plan, or the enforcement of any rights, remedies, or obligations created under the Plan;

(q) To determine such other matters as may be provided for in the Confirmation Order or other orders of the Court or as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(r)To hear any other matter if the Court's exercise of jurisdiction thereover is not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(s) To hear and determine issues relating to discharge, injunctions, covenants not to sue, and other waivers and protections provided under or relating to the Plan;

(t) To recover all Assets of the Debtor and the Estate wherever located; and

(u) To enter a final decree closing the Reorganization Case.

**15.2 Modification of the Plan**

### 15.2.1 Modification Before the Effective Date.

The Debtor as the Plan proponent may alter, amend or modify the Plan or any provision or portion thereof under Section 1127(a) of the Bankruptcy Code at any time prior to the Effective Date; provided, however, that there shall be no material modification to the Plan.  The Debtor shall provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Rules or any Order of the Court.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended, modified or clarified unless the proposed alteration, amendment, modification or clarification adversely changes the treatment of the Claim of, or releases granted to, such holder.

### 15.2.2 Modification Before Substantial Consummation

After the Effective Date but prior to the "substantial consummation" (as that term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, the BGH Plan Administrator may, pursuant to section 1127(b) of the Bankruptcy Code, institute proceedings in the Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and otherwise provide for such matters as may be necessary to carry out the purpose and effect of the Plan, as long as the proceedings do not adversely affect the treatment of holders of Claims under the Plan; provided, however, that, to the extent required by the Bankruptcy Rules or an order of the Court, prior notice of any such proceedings shall be served in accordance therewith.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not adversely change the treatment of the Claim, or releases granted to, such holder.

### 15.2.3  Modification After Substantial Consummation

After "Substantial Confirmation" (as that term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, the BGH Plan Administrator may amend the Plan to provide for technical corrections to the Plan provided that such changes do not affect the interests of the claim holders.

# ARTICLE XVI

## MISCELLANEOUS PROVISIONS

### 16.1 Payment of Statutory Fees

All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the Effective Date or as soon as practicable thereafter.

### 16.2 Exemption from Certain Transfer Taxes

Pursuant to section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments, or documents; (b) the creation of any Lien, mortgage, deed of trust, or other security interest; (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan or reinvesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in, the Plan; and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument is to be recorded hereunder shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, mortgage recording tax, sales, use, or similar tax.

### 16.3 Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a schedule or exhibit hereto or instrument, agreement, or other document executed in connection with the Plan provides otherwise, the rights, duties, and obligations arising under the Plan, and the instruments, agreements, and other documents executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the internal laws of the Commonwealth of Pennsylvania, without giving effect to any choice of law provisions that would require the application of the law of any other jurisdiction.

### 16.4 Notices

To be effective, all notices, requests, and demands under the Plan must be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

38

**To the Estate/BGH Plan Administrator:**

Robert S. Bernstein, Esquire
Suite 2200, Gulf Tower
707 Grant Street
Pittsburgh, PA 15219
**To the Debtor:**

Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc.
Lawrence C. Bolla, Esq.
2222 West Grandview Boulevard
Erie, PA 16506-4508

## 16.5 Further Documents and Actions

The Debtor and the BGH Plan Administrator shall execute, and are authorized to File with the Court and deliver, such agreements and other documents or information, and to take or cause to be taken such actions, as may be necessary or appropriate to effect and further evidence the terms and conditions of the Plan and to consummate the transactions and transfers contemplated by the Plan. The Estate and the BGH Plan Administrator and all other necessary or appropriate parties shall execute any and all documents and instruments that must be executed under or in connection with the Plan in order to implement the terms of the Plan or to effectuate the Distributions under the Plan, provided that such documents and instruments are reasonably acceptable to such party or parties.

## 16.6 Relationship Between the Plan and Disclosure Statement

To the extent that the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

## 16.7 Reservation of Rights

If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Reorganization Case, including the Debtor, are and will be reserved in full. Any concessions or settlements reflected herein (if any), are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest shall be bound or deemed prejudiced by any such concession or settlement.

## 16.8 Post-Confirmation Date Fees and Expenses

After the Confirmation Date, the Estate or the BGH Plan Administrator, as applicable, shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of the Professionals employed by the Estate, or the BGH Plan Administrator in connection with the implementation and consummation of the Plan, the claims reconciliation process and any other matters as to which such Professionals may be engaged. The fees and expenses of such Professionals shall be paid within ten (10) Business Days after

39

submission of a detailed invoice therefore to the BGH Plan Administrator and the BGH Advisory Board.  If the BGH Plan Administrator or the BGH Advisory Board disputes the reasonableness of any such invoice, they shall timely pay the undisputed portion of such invoice, and submit the dispute regarding the balance of such invoice to the Court for a determination of its reasonableness.

## 16.9 Binding Effect

The provisions of this Plan shall be binding on, and shall inure to the benefit of, the Debtor, all holders of Claims or Equity Interests, any Entity named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, and any current or future heir, executor, administrator, successor, assign or any person or entity claiming derivatively through or because of any of the foregoing (including, but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code).  The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting any of the Reorganization Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

## 16.10 Exhibits

All Exhibits and Schedules to this Plan are incorporated into and are part of this Plan as if set in full herein.


  IN WITNESS WHEREOF, the undersigned has duly executed the Plan as of the date first above written.

    Respectfully submitted,

    QUINN, BUSECK, LEEMHUIS, TOOHEY &
    KROTO, INC.


    By _/s/ Lawrence C. Bolla_
     Lawrence C. Bolla
     Pa. I.D. #19679
     Nicholas R. Pagliari
     Pa. I.D. #87877
     2222 West Grandview Boulevard
     Erie, PA  16506-4508
     (814) 833-2222

     Attorneys for Debtor,
     Brownsville General Hospital, Inc.

Document #325613, v3

AMENDED EXHIBIT 10.1 A

Executory Contracts and Unexpired Leases being Assumed:


Not applicable.

Exhibit 11.1 A

Assets to be Abandoned

Not applicable.

Exhibit 13.8 A

Preference Claims

EXHIBIT A

ABBOTT LABORATORIES INC
AFLAC
AGFA CORPORATION
ALLEGHENY POWER
AMERICAN MEDICAL SYSTEMS
ATC HEALTHCARE SERVICES INC
B O A R PHYSICAL THERAPY
BARD INTERNATIONAL PRODUCTS
BAUSCH & LOMB
BAXTER HEALTHCARE CORPORATION
BERNARD GEISER MD
BIO MERIEUX INC
BIO-MEDICAL APPLICATIONS OF
BROWNSVILLE NURSES' ASSOCIATION/
C MISC
CANANWILL INC
CARBIS WALKER LLP
CARDINAL HEALTH
CARDINAL HEALTH MEDICAL
CENTRAL BLOOD BANK
CHARLEROI FEDERAL SAVINGS BANK
COLLEGE OF AMERICAN PATHOLOGY
COLUMBIA GAS
CONMED LINVATEC
CORNER SECURITY
DICKIE MCCAMEY & CHILCOTE
DONALD CROFTCHECK
E MISC
FARHAD SALARI-LAK MD
FISHER SCIENTIFIC COMPANY LLC
FRENCH TOWEL & UNIFORM
GE GROUP LIFE ASSURANCE
HIGH FIELD IMAGING
HIGHMARK BLUE CROSS/
HIGHMARK CASUALTY INSURANCE CO
HORIZON MENTAL HEALTH MGMT
KARL T SKRYPAK
KFORCE INC
LABORATORY CORPORATION OF AMERICA

| |
|---|
| LAW OFFICE OF HARRY J. CANCELMI |
| MALLINCKRODT MEDICAL |
| MEDICAL BILLING SOLUTIONS |
| MEDICAL INFORMATION TECHNOLOGY INC |
| MEDLINE INDUSTRIES |
| MENTOR UROLOGY INC |
| MONA ZAGLAMA MD |
| NATIONAL CITY BANK |
| NATIONAL CITY TRUST-PL-1341-10-7 |
| NEWELL FEDERAL CREDIT UNION |
| NURSEFINDERS OF WESTERN PA |
| ONCURA |
| OPEIU |
| ORTHO-CLINICAL DIAGNOSTICS |
| PADMARAO JEVAJI MD |
| PARENTE RANDOLPH PC |
| PENNSYLVANIA AMERICAN WATER CO |
| PRAXAIR DISTRIBUTION INC |
| QUADRAMED CORPORATION |
| ROBERT SMITH MD |
| SNYDER BROTHERS INC |
| SOLIANT HEALTH |
| SOUTHWEST MEDICAL CENTER |
| SOUTHWEST REGIONAL TAX BUREAU |
| ST JUDE MEDICAL S C INC |
| STAPLES BUSINESS ADVANTAGE |
| SYNTHES |
| THUGU S REDDY MD |
| TOSHIBA AMERICA MEDICAL SYSTEMS INC |
| TRU COPY |
| UNITED STATES POSTAL SERVICE |
| US FOODSERVICE/GREENSBURG DIVISION |
| VERIZON |
| WALLY CORPORATION |
| WYETH PHARMACEUTICALS |
| ZIMMER US INC |